Sean Olender, CSBN 196226
OLENDER
200 Washington Street, Suite 208
Santa Cruz, CA 95060
Telephone: (408) 797-0000
Email: case-status@olender.pro
Attorney for Petitioner
**VICTORIANO ROMERO-GONZALEZ**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION

| | |
|---|---|
| VICTORIANO ROMERO-GONZALEZ,<br>A-Number: A234-609-002,<br><br>Petitioner,<br><br>v.<br><br>WARDEN, Adelanto ICE Processing Center;<br>THOMAS GILES, Field Office Director, Los Angeles Field Office, U.S. Immigration and Customs Enforcement;<br>DAVID J. VENTURELLA, Acting Director, U.S. Immigration and Customs Enforcement;<br>MARKWAYNE MULLIN, Secretary, U.S. Department of Homeland Security;<br>TODD BLANCHE, Attorney General of the United States;<br>SIRCE E. OWEN, Acting Director, Executive Office for Immigration Review<br><br>Respondents. | Case No. 5:26-cv-5170<br><br>**PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241**<br><br>**IMMIGRATION DETAINEE EXPEDITED CONSIDERATION REQUESTED UNDER GENERAL ORDER 26-05** |

# I. INTRODUCTION

1. Petitioner Victoriano Romero-Gonzalez entered the United States in 1999. Ex. F ¶ 1 (certified English translation). He has lived here for twenty-seven years. He was not apprehended at the border. He was taken into immigration custody on May 20, 2026 upon his release from a federal prison in the interior of the country. He has a US citizen son with profound disabilities whom he adopted out of the foster system. He has one arrest in fifty-five years of life.

2. On June 17, 2026, the Immigration Court denied him release from custody. Ex. C at 17. It did not find him dangerous. It did not find him a flight risk. It did not weigh his equities against the Government's interest in detaining him. It made no individualized determination of any kind. It held instead that it lacked jurisdiction to consider the question, because Petitioner is an "applicant for admission" detained under section 235(b)(2) of the Immigration and Nationality Act, a provision written for people stopped at the threshold of the country, and that no immigration judge may set bond for such a person under any circumstances regardless of how long he has lived here and the strength of his equities.

3. The Immigration Judge's ruling rests on *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025), which holds that anyone who entered without inspection remains forever an applicant for admission subject to mandatory detention, "even if that alien has avoided apprehension for more than 2 years." *Id.* at 228. On the Government's theory, a person who crossed the border in 1999, raised a family, built a business, and paid taxes for a quarter century is legally indistinguishable from a traveler turned away at a port of entry this morning.

4. This Court has already rejected that reading. In *Maldonado Bautista v. Santacruz*, No. 5:25-cv-01873-SSS-BFM (C.D. Cal.), Judge Sykes held that

noncitizens who entered without inspection and were not apprehended on arrival are detained under 8 U.S.C. § 1226(a), not § 1225(b)(2), and are entitled to bond consideration and a custody redetermination hearing before an immigration judge. Ex. O at 281. The court reasoned that "individuals who have not been inspected and authorized by an immigration officer lack the trait to be categorized as an applicant for admission." Ex. N at 245. The court certified a nationwide Bond Eligible Class defined to include precisely Petitioner's situation, entered final judgment, and later vacated *Yajure Hurtado*.

5. On March 31, 2026, the Ninth Circuit stayed that relief pending appeal. It did so on jurisdictional grounds, holding that the Government had shown a strong likelihood of success on the argument that under *Trump v. J.G.G.*, 604 U.S. 670 (2025) claims for relief from mandatory detention necessarily imply the invalidity of confinement and must therefore be brought as habeas petitions in the district of confinement rather than as a nationwide class action. Ex. P at 283.

6. Petitioner brings this petition for a writ of habeas corpus in the district of his confinement. That is the vehicle the Ninth Circuit identified. This is the court it identified. Petitioner asks it to decide the question that the Immigration Court held it could not reach.

7. The relief sought is modest. Petitioner does not ask this Court to order him released on any particular terms, or to substitute its judgment for the agency's on danger to the public or flight risk. He asks for a determination that 8 U.S.C. § 1226(a) governs his detention, and for an order that he receive the individualized custody hearing that provision requires and that he has never had.

8. The equities are strong. Petitioner spent eighteen months on pretrial release in a federal criminal prosecution and appeared at every hearing. He

paid full restitution of $38,977, nine days before he was due to report to prison. Ex. J at 221 (Dkt. 48). He then drove himself to prison and surrendered on the appointed day. His appearance bond was exonerated. He was scored a zero-point offender under the US Sentencing Guidelines. The district court returned $206,646.57 in seized funds to him because the Government did not claim the money was criminally derived. Ex. K at 223.

9. And there is his son. V.O.R.-C. is eleven years old, a US citizen, and profoundly disabled. He was born with agenesis of the corpus callosum, colpocephaly, polymicrogyria, and hydromelia. He has severe autism and a severe intellectual disability. He is non-verbal. He cannot feed, bathe, dress, or toilet himself, and he cannot be left alone. During the 133 days Petitioner served in prison, V.O.R.-C.'s school documented behavioral regression that included tearing books, grabbing at teachers, and crying in class. Petitioner has now been detained longer than that, and his removal hearing is not finished.

## II. JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction under 28 U.S.C. § 2241, 28 U.S.C. § 1331, and Article I, Section 9, Clause 2 of the United States Constitution. Petitioner is in the custody of the United States and asserts that his custody violates the Constitution and laws of the United States. 28 U.S.C. § 2241(c)(3).

11. 8 U.S.C. § 1226(e) does not bar this action. That provision withdraws review of the Attorney General's discretionary judgments in individual custody decisions. It does not withdraw jurisdiction over constitutional challenges nor over challenges to the statutory framework of detention. *Demore v. Kim*, 538 U.S. 510, 516-17 (2003); *Singh v. Holder*, 638 F.3d 1196, 1200-02 (9th Cir. 2011); *Jennings v. Rodriguez*, 583 U.S. 281, 294-96 (2018). Petitioner does not ask this Court to substitute its discretion for the

agency's. He asks it to decide whether any statute authorizes his detention and whether the Constitution permits it.

12. Venue is proper in this District because Petitioner is detained at the Adelanto ICE Processing Center in Adelanto, San Bernardino County, California, within the Central District of California, and his immediate custodian is located here. *Rumsfeld v. Padilla*, 542 U.S. 426, 442-47 (2004). Assignment to the Eastern Division is proper under Local Rule 83-1.1, General Order 98-3, page 2-3, amending General Order No. 349-A(2)(A)(ii).

## III. PARTIES

13. Petitioner Victoriano Romero-Gonzalez is a fifty-five-year-old native and citizen of Mexico who has resided in the United States since 1999. He is detained at the Adelanto ICE Processing Center under A-Number A234-609-002.

14. Respondent WARDEN, is the Warden of the Adelanto ICE Processing Center is Petitioner's immediate physical custodian.

15. Respondent THOMAS GILES is the Field Office Director of the Los Angeles Field Office of U.S. Immigration and Customs Enforcement, with authority over Petitioner's detention and release.

16. Respondents DAVID J. VENTURELLA, MARKWAYNE MULLIN, and TODD BLANCHE are sued in their official capacities as, respectively, the Acting Director of U.S. Immigration and Customs Enforcement, the Secretary of Homeland Security, and the Attorney General of the United States.

## IV. EXHAUSTION

17. There is no statutory exhaustion requirement for a petition under 28 U.S.C. § 2241. Any prudential exhaustion requirement is satisfied or excused.

18. Petitioner sought and received a custody redetermination hearing before the Immigration Court. On June 17, 2026 the Immigration Judge denied release, holding that he lacked jurisdiction because Petitioner is detained under INA § 235(b)(2). Petitioner reserved appeal but did not appeal to the Board of Immigration Appeals.

19. An appeal would have been futile, and Respondents cannot show otherwise. The Immigration Judge denied release solely because he considered himself bound by *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025). The Board decided *Yajure Hurtado*. It is the Board's own published precedent, and a three-member panel could not have granted Petitioner relief without overruling it. The Board also lacks authority to pass on the constitutionality of the statute or the regulations, *Matter of C-*, 20 I&N Dec. 529, 532 (BIA 1992), which forecloses the claims Petitioner raises here. And on January 13, 2026, Chief Immigration Judge Teresa L. Riley instructed immigration judges nationwide to continue applying *Yajure Hurtado* notwithstanding the judgment in *Maldonado Bautista*. There was no relief for the Board to give.

20. This Court reached the same conclusion in *Maldonado Bautista*, holding that returning to the Board would be futile and that agency delay in adjudicating bond appeals warranted excusing exhaustion. The reasoning applies with greater force here, where the only question is one the Board has already answered against Petitioner in a precedent decision.

21. Further resort to the agency would be futile. The Immigration Judge's ruling was compelled by *Matter of Yajure Hurtado*, which binds every immigration judge in the country, and by the Chief Immigration Judge's guidance of January 13, 2026 instructing immigration judges to continue applying *Yajure Hurtado* notwithstanding the judgment in *Maldonado Bautista*. The Board cannot overrule its own precedent decision in

Petitioner's individual case, and it lacks authority to pass on the constitutionality of the statute or the regulations. *See Matter of C-*, 20 I&N Dec. 529, 532 (BIA 1992). Prudential exhaustion is excused where administrative remedies are inadequate or futile or where pursuing them would occasion irreparable injury. *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004); *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017).

## V. STATEMENT OF FACTS

### A. Petitioner's Life in the United States

22. Petitioner was born on December 25, 1970 in El Cobano, Michoacán, Mexico. He entered the United States in 1999. He has lived here continuously since, with a single absence of approximately two months in 2000.

23. Petitioner married Alicia Cardenas Moran on September 2, 1993. They have two adult daughters, Guadalupe Citlalli Romero-Cardenas and Claudia Zuleica Romero-Cardenas, both of whom hold Deferred Action for Childhood Arrivals. The family lives together at 3398 Senter Road, San Jose, California.

24. For many years Petitioner owned and operated a transmission repair shop in San Jose. The shop was designated an essential business during the COVID-19 pandemic. He filed federal income tax returns for more than ten consecutive years using an Individual Taxpayer Identification Number lawfully issued to him by the Internal Revenue Service. Until his detention, he was his household's sole source of income.

### B. V.O.R.-C.

25. V.O.R.-C. was born on September 24, 2014 in McAllen, Texas. He is a United States citizen. His birth mother brought him to Petitioner's household as an infant to be cared for while she worked. In May 2016 she

was arrested for child endangerment after repeatedly leaving him alone at night, and V.O.R.-C. was taken into protective custody.

26. Petitioner and his wife did not let V.O.R.-C. remain in the foster care system. They completed CPR training, submitted the household to background checks, passed home inspections, and became his licensed foster parents. On July 3, 2018, the family court entered a decree of adoption making them his legal parents. V.O.R.-C. was three years old.

27. V.O.R.-C.'s disabilities are severe and permanent. He was born with agenesis of the corpus callosum, colpocephaly, polymicrogyria, and hydromelia. He has been diagnosed with severe autism spectrum disorder and a severe intellectual disability. He is non-verbal and communicates, when he can, in phrases of no more than four words using an augmentative and alternative communication device belonging to his school district. His school has been unable to complete even a non-verbal cognitive assessment because his disabilities are so severe. He receives eighty-four percent of his instruction outside the general education classroom with the remaining period consisting exclusively of meals, breaks and physical education. At eleven, he is not toilet trained. He cannot grip a standard pen or open his own lunchbox. He requires general anesthesia for routine dental work. He will walk into traffic without comprehension of danger.

28. Petitioner was V.O.R.-C.'s primary caregiver. He drove him to and from school. He took him to church. He cut his hair. He knows, better than anyone else in the household, what V.O.R.-C. is pointing at when he points.

29. During the 133 days Petitioner was incarcerated, V.O.R.-C.'s Individualized Education Program documented a measurable regression. He began tearing books, grabbing teachers' arms, crying during class, and demonstrated increased sensitivity. That was the effect of a four-month

absence. Petitioner has now been detained for more than three months beyond that, with no end in sight.

### C. The Criminal Case and Petitioner's Compliance

30. On January 23, 2024, Petitioner was indicted in the Northern District of California. *United States v. Romero*, No. 5:24-cr-00032-PCP. He was arrested on February 7, 2024 and released the following day on a $25,000 unsecured appearance bond.

31. He remained on pretrial release for approximately eighteen months. He appeared at every scheduled proceeding. He violated no condition. On March 12, 2025, he pleaded guilty to two counts of transporting stolen goods in foreign commerce, 18 U.S.C. § 2314. Count One, charging conspiracy, was dismissed on the Government's motion.

32. On August 6, 2025, Judge P. Casey Pitts sentenced him to concurrent six-month terms, three years of supervised release, a $200 special assessment, and $38,977 in restitution. No fine was imposed. His appearance bond was exonerated. The Sentencing Guidelines calculation to which the parties stipulated included the zero-point offender reduction of U.S.S.G. § 4C1.1.

33. Petitioner paid the special assessment on September 19, 2025. He paid the restitution in full, together with $125.26 in interest, on December 30, 2025, which was nine days before he was due to report to prison. He then surrendered voluntarily to the Bureau of Prisons on January 7, 2026, as ordered.

34. By stipulation and order entered September 11, 2025, the district court directed the return to Petitioner of the balance of $206,646.57 seized from his shop in April 2021. The Government made no claim that those funds were criminal proceeds. The Office of the United States Attorney has confirmed in writing that the case is closed. Ex. L at 225.

35. This is the only arrest of Petitioner's life.

**D. Removal Proceedings**

36. On May 20, 2026, Petitioner completed his criminal sentence and was released from the custody of the Bureau of Prisons directly into the custody of Immigration and Customs Enforcement. He was served with a Notice to Appear the same day. He was not apprehended at or near the border, and he was not placed in expedited removal proceedings.

37. The Notice to Appear charges a single ground of removability: presence in the United States without admission or parole, INA § 212(a)(6)(A)(i), 8 U.S.C. § 1182(a)(6)(A)(i). Ex. A at 1. It pleads no allegation concerning any criminal conviction. The Department has lodged no additional charge at any time in these proceedings.

38. Petitioner filed an application for cancellation of removal, form EOIR-42B, on June 11, 2026, and an application for asylum and withholding of removal, Form I-589, on July 31, 2026.

39. At a prior hearing the Immigration Judge identified the immigration consequences of Petitioner's convictions under 18 U.S.C. § 2314 as the contested legal question in the case and invited both parties to submit supplemental briefing. Petitioner filed a brief on August 4, 2026, together with the complete record of conviction. The Department filed nothing.

40. Petitioner's individual merits hearing convened on August 13, 2026 and August 31, 2026 before Immigration Judge Curtis G. White. The August 13, 2026 hearing had to be continued after the Court’s bond hearings consumed too much of the day to accept evidence or testimony in Petitioner’s case. At the August 31, 2026 hearing, the superintendent of V.O.R.-C.'s school district testified by telephone. Petitioner's daughter, Guadalupe Citlalli Romero-Cardenas, testified. Petitioner took the stand and testified in part. The Immigration Judge asked the parties whether they were prepared to remain past the ordinary close of the court day and,

with their agreement, continued taking testimony until 5:00 p.m. Petitioner's testimony was nonetheless not completed. The hearing was continued to September 15, 2026 at 1:00 p.m.

41. During the hearing the Immigration Judge stated on the record that he saw no disqualification from relief arising from Petitioner's criminal convictions. Counsel for the Department, who had filed no brief on the question, referred the court to *Matter of Fernandez*, 14 I&N Dec. 24 (BIA 1972). Petitioner's counsel explained that *Fernandez* construed a different paragraph of 18 U.S.C. § 2314 – the forged-securities provision – whereas the paragraph under which Petitioner was convicted requires only an intent to deprive the owner "temporarily or permanently." The Immigration Judge invited the Department to respond. It offered nothing further.

**E. The Bond Denial**

42. Petitioner sought a custody redetermination. On June 17, 2026, Immigration Judge Curtis G. White issued a Bond Decision and Memorandum denying release from custody.

43. The decision made no finding that Petitioner is a danger to the community. It made no finding that he is a flight risk. It did not weigh his family ties, his length of residence, his employment history, his compliance with the conditions of his federal pretrial release, or the likelihood that he will be granted relief from removal. It reached none of those questions.

44. The Immigration Judge instead checked the box stating that the Court "does not have authority, jurisdiction, and venue for custody redetermination pursuant to ... Section 236(a) of the Immigration and Nationality Act." Ex. C at 11. The stated basis was that Petitioner "was detained under section 235(b)(2) of the Act, as an applicant for admission per section 235(a)(1) of the Act and as the examining immigration officer

determined that the applicant is not clearly and beyond a doubt entitled to be admitted," and that the record shows he "has not been admitted into the United States," citing the Notice to Appear's allegation that he is "an alien present in the United States without being admitted or paroled." Ex. C at 13.

45. The decision further noted that any warrant of arrest, custody document, or parole issued after the fact "does not convert the statutory authority governing detention to section 236(a) of the Act," citing *Matter of Q. Li*, 29 I&N Dec. 66, 69 n.4 (BIA 2025), and that the February 18, 2026 order in *Maldonado Bautista* vacating *Matter of Yajure Hurtado* had been stayed by the Ninth Circuit.

46. The Immigration Judge's incorporated Addendum of Law states the governing rule as announced by the Board: "Immigration Judges lack authority to hear bond requests or to grant bond to aliens who are present in the United States without admission," including "an alien who crossed the border unlawfully without inspection, even if that alien has avoided apprehension for more than 2 years." *Matter of Yajure Hurtado*, 29 I&N Dec. at 228.

47. The Department waived appeal. Petitioner reserved it. The order is signed by Immigration Judge Curtis G. White and dated June 17, 2026.

48. Petitioner has therefore been in custody for more than three months without any adjudicator ever having asked whether he should be.

### F. Present Detention and Its Anticipated Duration

49. Petitioner has been detained at the Adelanto ICE Processing Center continuously since May 20, 2026. He has a serious kidney condition arising from an acute kidney injury in 2019, for which he has been hospitalized on multiple occasions and requires daily medication.

50. His removal hearing resumes on September 15, 2026. A decision will follow at some interval thereafter. If the Immigration Judge grants relief,

the Department may reserve and pursue an appeal to the Board of Immigration Appeals, a process that routinely consumes a year or more. On the Government's own theory of detention authority, Petitioner is ineligible for bond throughout, no matter how long that takes.

51. Petitioner will have been detained 180 days on or about November 16, 2026.

### G. The Structural Cause of the Delay

52. Petitioner's quarrel is with the rule, not with the Immigration Judge. A Board precedent decision binds an immigration judge, and on January 13, 2026 the Chief Immigration Judge instructed immigration judges nationwide to apply *Yajure Hurtado*. Confronted with that instruction, the Immigration Judge did what he was required to do. Only an Article III court can do otherwise, which is why Petitioner is here. The scheduling delay likewise reflects no want of diligence: the Immigration Judge solicited briefing on the contested legal question, has kept the case moving, and extended his own working day past 5:00 p.m. to take testimony.

53. The delay is structural. According to the Transactional Records Access Clearinghouse at Syracuse University, which compiles Immigration Court records obtained under the Freedom of Information Act, 3,195,137 cases were pending before the Immigration Courts at the end of June 2026. In the first nine months of Fiscal Year 2026 alone, the courts received 413,945 new cases and completed 687,353. The Executive Office for Immigration Review reported approximately 743 immigration judges nationwide as of August 2026, which include approximately 82 who were sworn in in May 2026. That is a ratio exceeding 4,300 pending cases for every sitting judge.

54. No adjudicator can carry such a docket and also guarantee that a contested, multi-witness merits hearing will be completed in a single afternoon.

55. These figures bear on the reasonableness inquiry in a specific way. A court assessing prolonged detention asks not only how long a person has been held but why, and whether the delay is attributable to the detainee, the Government, or neither. Petitioner has caused none of it; he requested no continuances of any hearing. Where delay is systemic, it is neither the detainee's fault nor within his power to cure. That is precisely the circumstance in which continued confinement must be justified rather than assumed.

## VI. CLAIMS FOR RELIEF

### CLAIM ONE

### Petitioner Is Detained Under 8 U.S.C. § 1226(a), Not § 1225(b)(2), and Is Entitled to a Custody Hearing

56. Petitioner realleges and incorporates each preceding paragraph.

57. Section 1225 governs the inspection of persons seeking entry into the United States. Section 1226 governs the arrest and detention of noncitizens already here, pending a decision on removal. The two provisions address different populations at different moments, and Congress gave them different consequences: § 1226(a) expressly authorizes release on bond or conditional parole, while § 1225(b)(2) contains no such authority.

58. Petitioner belongs to the population governed by section 1226. He entered the United States in 1999 and has lived here continuously for twenty-seven years. He was not stopped at a port of entry. He was not apprehended at or near the border. He was not placed in expedited removal. He was taken into immigration custody in 2026, in the interior, upon release from a federal prison. Whatever else he is, he is not a person standing at the threshold of the country asking to be let in.

59. Respondents' own records confirm each element. The Form I-213 prepared by Deportation Officer Jason Rocha states that Immigration and Customs

Enforcement officers encountered Petitioner on May 12, 2026 at the Federal Correctional Complex in Lompoc, California, and arrested him there on May 20, 2026 at 3600 Guard Road, Lompoc – a federal prison in the interior of this State, several hundred miles from the international border and twenty-seven years after his entry. Ex. B at 5-6. The form records his last entry as occurring on an unknown date at an unknown location, Id. at 6, and leaves blank the field for "Length of Time Illegally in U.S.," Id. at 1. Petitioner was not apprehended upon arrival. He was located through a records check, interviewed in prison.

60. This Court has so held. In *Maldonado Bautista v. Santacruz*, No. 5:25-cv-01873-SSS-BFM, Judge Sykes granted partial summary judgment for a class of noncitizens who entered without inspection and were not apprehended upon arrival, holding that they are detained under § 1226(a) and are not subject to mandatory detention under § 1225(b)(2). The court rejected the Government's contrary reading as one that would “effectively nullify a portion of the INA,” and reasoned that individuals who have never been inspected by an immigration officer lack the very characteristic that defines an “applicant for admission.” The court certified a nationwide Bond Eligible Class comprising noncitizens who (1) entered the United States without inspection, (2) were not apprehended upon arrival, and (3) are not subject to detention under § 1226(c), § 1225(b)(1), or § 1231 at the time of the initial custody determination. It entered final judgment declaring that class members are detained under § 1226(a), are entitled to bond consideration by immigration officers, and if not released are entitled to a custody redetermination hearing before an immigration judge. It vacated the Department's July 8, 2025 “Interim Guidance Regarding Detention Authority for Applicants for Admission” under the Administrative Procedure Act, and on February 18, 2026 vacated *Matter of*

*Yajure Hurtado*.

61. Petitioner satisfies every element of that class definition. He entered without inspection. He was not apprehended upon arrival. He is not subject to § 1226(c), because the Notice to Appear charges no criminal ground and his convictions under 18 U.S.C. § 2314 are neither aggravated felonies nor crimes involving moral turpitude – a question the Immigration Judge already addressed on the record: he perceives no disqualification. He is not subject to § 1225(b)(1), never having been placed in expedited removal. He is not subject to § 1231, having no final order of removal.

62. The Ninth Circuit's stay of the *Maldonado Bautista* relief does not disturb the reasoning of the district court's merits ruling. The stay rested on the Government's jurisdictional arguments, principally that under *Trump v. J.G.G.*, 604 U.S. 670 (2025), claims of this kind necessarily imply the invalidity of confinement and must be brought as habeas petitions in the district of confinement rather than as a class action. That holding does not reject the statutory analysis. It identifies the correct procedural vehicle. Petitioner has now used it, in the district where he is confined.

63. Reading § 1225(b)(2) as the Government does would also raise grave constitutional questions that counsel against it. On that reading, a person who has lived in this country for decades, whose family and livelihood are here, and who has never been found dangerous or a flight risk by anyone, may be held without bond for the entire duration of removal proceedings and any appeal, with no hearing ever, at which the Government must justify his confinement. Where a statute is susceptible of a reading that avoids such a question, that reading is to be preferred. *Zadvydas v. Davis*, 533 U.S. 678, 689 (2001).

64. Because Petitioner is detained under § 1226(a), the Immigration Court had jurisdiction to consider his release, and its refusal to do so leaves him

confined without lawful authority. He is entitled to release or to a prompt custody hearing.

## CLAIM TWO

## Detention Without Any Individualized Custody Determination Violates the Due Process Clause

65. Petitioner realleges and incorporates each preceding paragraph.

66. "Freedom from imprisonment — from government custody, detention, or other forms of physical restraint — lies at the heart of the liberty that Clause protects." *Zadvydas*, 533 U.S. at 690. Civil detention survives substantive due process review only where it bears a reasonable relation to the purpose for which the individual is committed. *Id.* at 690-91; *Jackson v. Indiana*, 406 U.S. 715, 738 (1972). The recognized purposes of detention during removal proceedings are ensuring appearance and protecting the community. *Demore v. Kim*, 538 U.S. 510, 528 (2003).

67. No adjudicator has ever found that either purpose is served by detaining Petitioner. That is not an oversight. Under the regime Respondents defend, no adjudicator is permitted to ask. The Immigration Judge was foreclosed from reaching danger or flight by a rule that strips him of jurisdiction, and the Board cannot revisit its own precedent or reach a constitutional claim. Petitioner is confined not because anyone determined he should be, but because the Government has constructed a system in which the question is never put to anyone.

68. Had the question been reached, the record would have answered it. Petitioner spent eighteen months on pretrial release in a federal criminal prosecution in which he faced imprisonment, and appeared at every hearing. His appearance bond was exonerated. He paid his restitution in full nine days before his surrender date, and then surrendered to federal prison on the day he was ordered to. Respondents can identify no occasion

on which Petitioner has failed to appear anywhere he was told to be. As to danger, he has one arrest in fifty-five years, for a non-violent property offense scored at zero criminal history points, for which he has served his sentence and made his victims whole.

69. *Jennings v. Rodriguez* held that the detention statutes do not themselves require periodic bond hearings, but expressly declined to reach the constitutional question and remanded for consideration of as-applied challenges. 583 U.S. 281, 313-14 (2018); *see Rodriguez v. Marin*, 909 F.3d 252, 256-57 (9th Cir. 2018) (noting the "serious constitutional concerns" raised by prolonged detention without individualized review). *Rodriguez Diaz v. Garland*, 53 F.4th 1189 (9th Cir. 2022), is not to the contrary. The petitioner there had received a discretionary bond hearing on the merits, and the question was whether he was entitled to a second one and to a reallocated burden. Petitioner received no merits determination at all.

70. The private interest here is grave and the governmental interest, on this record, is nearly absent. Petitioner's son is a non-verbal, incontinent, medically fragile eleven-year-old United States citizen who cannot be left unsupervised and who regressed measurably during his father's four-month incarceration. Petitioner's own kidney condition requires continuous medical management. His household has lost its only source of income. Against that stands no finding of danger, no finding of flight risk, and no adjudicator willing to make one.

**CLAIM THREE**

**In the Alternative, Petitioner Is Entitled to a Prolonged-Detention Hearing at Which the Government Bears the Burden**

71. Petitioner realleges and incorporates each preceding paragraph.

72. Even on Respondents' own theory of detention authority, Petitioner is not detainable indefinitely without any hearing. The Immigration Judge's

incorporated Addendum of Law acknowledges as much. It states that the permanent injunction entered in *Rodriguez v. Holder*, No. CV 07-3239 TJH (RNBx), 2013 WL 5229795 (C.D. Cal. Aug. 6, 2013) requiring bond hearings after six months of detention for noncitizens within the Central District held under 8 U.S.C. §§ 1225(b), 1226(a), and 1226(c) was never vacated, stayed, or modified by the Supreme Court or the Ninth Circuit, and "remain[s] in effect" in this District. *See Rodriguez v. Marin*, 909 F.3d 252, 256 (9th Cir. 2018); *Rodriguez v. Marin*, No. CV 07-03239-TJH (SPx), 2020 WL 13724475, at *3 (C.D. Cal. May 28, 2020).

73. The Addendum further states the burden applicable at such a hearing: in *Rodriguez* bond proceedings the Department bears the burden to justify continued detention by clear and convincing evidence and must demonstrate that the detainee presents a danger to the community, a threat to national security, or a flight risk. *Rodriguez v. Robbins*, 804 F.3d 1060, 1087 (9th Cir. 2015); *Matter of Panin*, 28 I&N Dec. 771, 772 (BIA 2024). The Addendum also recites that the adjudicator must consider the detainee's financial ability to pay, must not set bond higher than necessary to ensure appearance, and must consider alternatives to detention. *Hernandez v. Sessions*, 872 F.3d 976, 981-82 (9th Cir. 2017).

74. Petitioner will have been detained 180 days on or about November 16, 2026. If this Court does not grant relief on Claims One or Two, it should at minimum order that Petitioner receive a hearing conforming to those standards on or before that date, and should retain jurisdiction to ensure that he does.

//

//

//

//

## VII. PRAYER FOR RELIEF

WHEREFORE, Petitioner respectfully requests that this Court:

a. Assume jurisdiction over this matter;
b. Issue a writ of habeas corpus directing Respondents to release Petitioner from custody immediately, on reasonable conditions of supervision;
c. Declare that Petitioner is detained pursuant to 8 U.S.C. § 1226(a) and is eligible for release on bond or conditional parole;
d. Order that Respondents not transfer Petitioner outside the Central District of California during the pendency of these proceedings without at least two court days' notice to Petitioner, counsel, and this Court, as provided by General Order 26-05;
e. Order Respondents to provide Petitioner, within seven days of this Court's order, a custody hearing before an Immigration Judge conducted under 8 U.S.C. § 1226(a), at which the Government bears the burden of proving by clear and convincing evidence that Petitioner is a danger to the community or a flight risk, and at which the Immigration Judge must consider Petitioner's financial ability to pay any bond and the availability of alternatives to detention;
f. Order that if Respondents fail to provide such a hearing within seven days, Petitioner shall be released forthwith on reasonable conditions of supervision;
g. Retain jurisdiction to enforce this order;
h. Award Petitioner reasonable costs and attorney's fees under the Equal Access to Justice Act, 28 U.S.C. § 2412; and
i. Grant such further relief as this Court deems just and proper.

Dated: September 8, 2026

Sean Olender
Attorney for Petitioner

## VERIFICATION

I, Sean Olender, declare:

I am the attorney of record for Petitioner Victoriano Romero-Gonzalez. I submit this verification on Petitioner's behalf because he is detained at the Adelanto ICE Processing Center and access to him for signature is restricted. *See* 28 U.S.C. § 2242 (petition may be signed and verified by "someone acting in his behalf").

I have read the foregoing Petition. The factual allegations concerning Petitioner's immigration proceedings, his criminal case, and the records of both are true of my own knowledge, based on my representation of Petitioner and my review of the records described. The allegations concerning Petitioner's family circumstances and his son's medical condition are based on my review of the declarations, medical records, and educational records filed in the immigration proceedings and attached as exhibits, and on my communications with Petitioner and his family, and I believe them to be true.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on September 8, 2026, at Scotts Valley, California.

Sean Olender
SBN 196226